**POSNER LAW CORPORATION**
ASHLEY D. POSNER (Cal. Bar No. 106195)
15303 Ventura Boulevard, Suite 900
Sherman Oaks, CA 91403
Telephone: (310) 475-8520
ashleyposner@gmail.com

**NAGEL RICE, LLP**
Jay J. Rice, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
jrice@nagelrice.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD LINDZON, SOCIAL LEVERAGE, LLC, SOCIAL LEVERAGE CAPITAL FUND I, LP and SOCIAL LEVERAGE CAPITAL FUND II, LP,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL NADLER, and KENSHO TECHNOLOGIES, INC.<br><br>Defendants. | Case No.:<br><br>3:15-cv-00828-DMS-JLB<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Howard Lindzon ("Lindzon"), Social Leverage, LLC ("SL"), Social Leverage Capital Fund I, LP and Social Leverage Capital Fund II, LP, (collectively, "Plaintiffs"), by and through their undersigned counsel, Nagel Rice, LLP, state as follows for their complaint against Daniel Nadler ("Nadler") and Kensho Technologies, Inc. ("Kensho") (collectively, "Defendants"):

## INTRODUCTION

1. Nadler has begun targeting industry insiders and colleagues by making false and defamatory statements about the reputation of Lindzon. By his false and defamatory statements, Nadler is damaging SL and Lindzon's business, and committing unfair business acts in violation of California law.

2. By their complaint, Plaintiffs jointly assert the following claims for relief: defamation (Count I), trade libel (Count II), unfair business acts, practices and/or conduct in violation of Cal. Bus. & Prof. Code § 17200, *et seq.* (Count III), intentional interference with prospective economic advantage (Count IV), and Kensho's vicarious liability (Count V).

3. Plaintiffs have expended considerable time and resources developing and promoting their business and business relationships. As a result of Nadler's false and misleading statements, Plaintiffs have been, and will in the future be, forced to spend substantial attorneys' fees, as well as additional costs and expenses, to undo the deceptive and misleading information disseminated by Defendant Nadler concerning Plaintiffs.

4. Nadler's conduct including, but not limited to, his acts of defamation, trade libel, unfair business acts, practices and/or conduct, and intentional interference with prospective economic advantage have reduced the value of SL and otherwise have damaged Plaintiffs in an amount to be determined at trial.

5. Plaintiffs are aware at this time of the false and defamatory statements described in this Complaint. Discovery is necessary to reveal the full extent of Nadler's false and misleading statements and the dissemination of such statements.

## PARTIES

6. Social Leverage, LLC is a Delaware limited liability company with its principal place of business located at 1307 Ynez Place, Coronado, California. Social Leverage Capital

1

Fund I, LP and Social Leverage Capital Fund II, LP are all affiliates and part of the Social Leverage Business Family.

7. Howard Lindzon is a citizen of California, residing in San Diego County, California.

8. Upon information and belief, Kensho Technologies, Inc. is a Delaware corporation with its principal place of business located at 17 Dunster St., Cambridge, Massachusetts.

9. Upon information and belief, Daniel Nadler is a citizen of Massachusetts residing in Middlesex County, Massachusetts.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this civil action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and this matter is between citizens of different states, as Defendants are citizens of Massachusetts and Plaintiffs are citizens of California.

11. Venue is proper in the United States District Court for the Southern District of California under 28 U.S.C. § 1391(a)-(d) because, upon information and belief, a substantial part of the events giving rise to the claims occurred there.

## FACTUAL BACKGROUND

**A.   Plaintiffs' and Defendants' Prior Relationship**

12. SL is a leading early stage seed investment fund that invests in entrepreneurs in the technology sector. SL partners with promising companies and brings its own entrepreneurial expertise, relationships, and marketing experience to the fore. Simply, SL leverages its extensive network of industry relationships and expertise to help grow companies and build products.

13. The community of investors in start-up tech deals is small. Institutional investors that are part of this community tend to back multiple funds.

14. Lindzon is the Founder and General Partner, as well as the public face, of SL. Lindzon has more than twenty (20) years of experience in the financial community in both an entrepreneurial and investing capacity. His previous experience provides SL with access to a community of professionals who evaluate financial and technical opportunities.

15. There exist and existed at all times relevant to this Complaint actual and prospective economic relationships between Plaintiffs and others within the industry, evidenced in part by prospective or actual contractual agreements. Such economic relationships contain an economic benefit as well as future economic benefits to Plaintiffs.

16. One of the aforementioned economic relationships is Plaintiffs' relationship with Defendant Kensho: on or about May 28, 2013, Social Leverage Capital Fund I, LP, became an investor in Kensho – investing over $250,000. While there were other investors in Kensho at the time of SL's initial investment, SL was the Majority Note Holder.

17. Upon information and belief, Nadler was at the time of SL's investment in Kensho, and still remains, the Co-Founder and Chief Executive Officer of Kensho.

**B.    Nadler's False And Defamatory Statements Of February 2, 2015 to Brad Feld.**

18. On February 2, 2015, Defendant Nadler sent a false and defamatory email regarding Plaintiff Lindzon and SL's reputation and overall fitness of character. Nadler, representing himself as "CEO of Kensho", informed Brad Feld ("Feld"), co-founder of the prominent venture capital firm Foundry Group, that Lindzon had violated regulations and accounting standards through "Bernie Madoff-like scams."

19. Among other things, Nadler's email was an attempt, through false and misleading statements about Lindzon, to dissuade Mr. Feld from entering into business relationships with, or otherwise associating himself with, Lindzon and companies with which Lindzon is associated.

3

Specifically, Nadler wrote that he had "learned that Howard Lindzon is claiming a *close* association with you. I want to open a line of communication with you regarding that" (emphasis in original). Nadler's email goes on to falsely state that there are "so many zealous and powerful firms bringing down resources on Howard Lindzon and Social Leverage," and that, as a result, he wishes for Mr. Feld to "please reach out to me personally and *I will make certain you are kept out of it.*" (emphasis in the original). Nadler asserts at the end of the email that he seeks to "keep you and your good name out of any unfortunate association with Howard Lindzon that might arise in the course of our vigorous exposure of him to those seeking references of him from us."

20.  Throughout the email, Nadler makes false and defamatory statements regarding Lindzon. Among other things, Nadler libelously states Lindzon is a person "who uses shell games and bait and switch tactics to lure and exploit" inexperienced first-time entrepreneurs. Nadler falsely claims Lindzon has a "checkered past" and falsely states that "other entrepreneurs had actually sued him for attempting to scam and manipulate them." Finally, Nadler falsely asserts that Lindzon caused millions of dollars to "simply disappear[]" in previous financial relationships with "Limited Partners."

C.  **Nadler Spreads Further False And Defamatory Statements In February 27, 2015 Email To Fred Destin And Larry Bohn**

21.  On or about February 27, 2015, Nadler sent another defamatory email regarding Lindzon and SL to Fred Destin ("Destin"), a partner at Accel Partners, a prominent investment firm, and Larry Bohn ("Bohn") of General Catalyst, another prominent investment firm. This email's purported purpose was to help Mr. Destin "better understand" the "unanimous sentiment" among "all our other investors" to "stay as far away from [Lindzon and SL] as possible." Nadler specifically states in the email that Lindzon "would be *toxic* to the company, and in fact to everyone around him." (emphasis in original).

4

22. Among other things, Nadler falsely states that Lindzon violated rules specifically designed to prevent "Bernie Madoff-like scams." Nadler goes on to falsely state that "we know for certain" that Lindzon previously allowed "millions of dollars of his [Limited Partners'] funds" to "simply disappear[]" and to accuse Lindzon of having "questionable character."

23. Nadler finishes the email by, among other things, falsely claiming to Messrs. Destin and Bohn that "[t]his is just the tip of the iceberg." Nadler goes on to accuse Lindzon of committing fraud and violating SEC "laws" by not informing Nadler of certain alleged information, of having a "checkered past", falsely claiming that "other entrepreneurs…sued him for scamming them", "and so on." Nadler concludes the email by warning Messrs. Destin and Bohn that "I don't need to wait to discover every lurid detail to know enough to stay away" and signs off the email as "Chief Executive Officer" of "Kensho."

## COUNT I

## DEFAMATION

24. Plaintiffs incorporate by reference Paragraphs 1 through 23 of this Complaint as if the same were set forth in full herein.

25. Nadler published false and disparaging statements in writing concerning Plaintiffs. Specifically, Nadler, without justification or privilege, stated or implied to parties with actual and potential business relationships with Plaintiffs that, among other things, Plaintiffs have engaged in criminal and other highly inappropriate and unethical business activities and that Plaintiffs have been sued by other entrepreneurs for such activities.

26. These statements are defamatory *per se* because they are false, unprivileged, and tend to adversely affect Plaintiffs in their trade and business by imputing to Plaintiffs

5

disqualifications, dishonesty, incompetence, and improper and immoral conduct that tend to lessen Plaintiffs' profits.

27. Plaintiffs are informed and believe, and on that basis allege, that Nadler knew of the falsity of his statements at the time of publication.

28. Plaintiffs are informed and believe, and on that basis allege, that Nadler published these false statements with the intent to cause injury to Plaintiffs' actual and potential business relationships and overall business reputations. These statements were untrue and were understood by those who learned of them in a manner which defamed Plaintiffs.

29. As a direct and proximate result of Nadler's wrongful conduct, Plaintiffs have suffered general damages to their reputations in an amount to be determined at trial. As further direct and proximate result of Nadler's wrongful conduct, Plaintiffs have suffered special damages, in an amount to be determined at trial.

30. Plaintiffs are informed and believe, and on that basis allege, that Nadler's conduct as alleged herein was intentional and malicious. Plaintiffs therefore are entitled to an award of punitive damages against Nadler, in an amount sufficient to discourage and deter such conduct in the future.

## COUNT II

### TRADE LIBEL

31. Plaintiffs incorporate by referenced Paragraphs 1 through 30 of this Complaint as if the same were set forth in full herein.

32. Nadler published false and disparaging statements concerning Plaintiffs' business. Specifically, Nadler, without justification or privilege, stated or implied to parties with actual and potential business relationships with Plaintiff that, among other things, Plaintiffs have engaged in

criminal and other highly inappropriate and unethical business activities and that Plaintiffs have been sued by other entrepreneurs for such activities.

33. Plaintiffs are informed and believe, and on that basis allege, that Nadler knew of the falsity of his statements at the time of publication.

34. Plaintiffs are informed and believe, and on that basis allege, that Nadler's publication of false and disparaging statements were made intentionally, with malice or in reckless disregard for the truth, and were intended to and did induce others not to deal with Plaintiffs.

35. Nadler's false statements disparaged Plaintiffs' on-going business interests, their business reputation, their reputations within the community and the goodwill they enjoyed with customers, clients and the industry as a whole.

36. On information and belief, persons and entities in the business community refrained from discussing, proposing, and/or engaging in business transactions with Plaintiffs as a result of hearing or leaning of Nadler's false and disparaging statements.

37. As a direct and proximate result of Nadler's wrongful conduct, Plaintiffs have suffered actual, pecuniary damages, including irreparable injury to their business reputations and lost business and profits, in an amount to be proven at trial.

38. Plaintiffs are informed and believe, and on that basis allege, that Nadler's conduct as alleged herein was intentional and malicious. Plaintiffs therefore are entitled to an award of punitive damages against Nadler, in an amount sufficient to discourage and deter such conduct in the future.

## COUNT III

## UNFAIR BUSINESS ACTS, PRACTICIES AND/OR CONDUCT

39. Plaintiffs incorporate by reference Paragraphs 1 through 38 of this Complaint as if the same were set forth in full herein.

40. California Business and Professions Code § 17200 *et seq.* forbids unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice."

41. Nadler's acts have impaired Plaintiffs' goodwill, have created a likelihood of confusion, and have otherwise adversely affected Plaintiffs' business and reputations by use of unlawful, unfair and fraudulent business practices. Nadler's conduct also violates federal statutory law, as set forth herein. These acts constitute unfair competition and unfair business practices under California Business and Professions Code § 17200 *et seq.* and California common law.

42. Plaintiffs have suffered injury in fact and have lost money or property as a result of Nadler's acts of unfair competition. Among other things, Plaintiffs are informed and believe and thereon allege that by engaging in the acts and conduct set forth herein, Nadler disrupted existing and prospective business relationships between Plaintiffs and others in the start-up technology industry. As a legal and proximate result of Nadler's wrongful actions, the value of SL has been reduced and Plaintiffs have otherwise been damaged in an amount to be established according to proof at trial.

43. Plaintiffs are informed and believe and thereon allege that Nadler's actions are willful, oppressive, fraudulent, and in conscious disregard of the rights of Plaintiffs and the resulting harm to Plaintiffs. As a result, Nadler should be assessed punitive and exemplary damages in an amount to punish and deter such conduct in the future.

44. By reason of his actions, Nadler is required to make restitution to Plaintiffs in a sum to be proven at trial.

45. As a direct and proximate result of Nadler's unfair competition, Plaintiffs have suffered and will continue to suffer irreparable harm. Nadler, unless and until restrained and enjoined by this Court, will continue to engage in such unlawful acts. Plaintiffs' remedy at law is not by itself adequate to compensate Plaintiffs for the harm inflicted and threatened by Nadler. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief restraining Nadler, his agents and employees, and all persons acting in concert with him, from engaging in any further acts in violation of Cal. Bus. & Prof. Code § § 17200, et seq.

## COUNT IV

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

46. Plaintiffs incorporate by reference Paragraphs 1 through 45 of this Complaint as if the same were set forth in full herein.

47. Economic relationships exist between Plaintiffs, technology sector seed investors and entrepreneurs in the industry. These relationships hold probable future economic benefits or advantages to Plaintiffs.

48. Nadler knew of the existence of these economic relationships, and knew or should have known that if he did not act with due care, his actions would interfere with these relationships and cause Plaintiffs to lose, in whole or in part, the probable future economic benefits or advantages of the relationships.

49. On information and belief, persons and entities in the business community refrained from discussing, proposing, and/or engaging in business transactions with Plaintiffs as a result of hearing or leaning of Nadler's false and disparaging statements.

50. By the wrongful conduct alleged herein, Nadler intended to, and did in fact, disrupt Plaintiffs' relationships with other investors and entrepreneurs in the industry. The wrongful conduct, including the false and disparaging statements by Nadler regarding Plaintiffs,

was designed to interfere with and disrupt the economic relationships between Plaintiffs and other investors and entrepreneurs. Nadler's wrongful conduct resulted in permanent damage to these relationships.

51. As a direct and proximate result of Nadler's wrongful and unjustified actions, Plaintiffs have suffered and will continue to suffer damages, in an amount to be proven at trial.

52. Plaintiffs are informed and believe, and on that basis allege, that in committing the acts alleged herein, Nadler is guilty of oppression, fraud or malice within the meaning of California Civil Code § 3294, and that Nadler authorized, ratified or performed the acts detailed herein, entitling Plaintiffs to punitive or exemplary damages against Nadler sufficient to punish and deter him from engaging in such conduct in the future, in an amount to be ascertained at trial.

## COUNT V

### DEFENDANT KENSHO'S VICARIOUS LIABILITY

53. Plaintiffs incorporate by reference Paragraphs 1 through 52 of this Complaint as if the same were set forth in full herein.

54. Plaintiffs bring this Count against Defendant Kensho on the basis that it is vicariously liable for all the Counts herein based on a theory of "respondeat superior." Plaintiffs base this Count on the entire Introduction, Factual Background and Counts herein.

55. Plaintiffs are entitled to punitive or exemplary damages against Kensho sufficient to punish and deter it from allowing such conduct in the future, in an amount to be ascertained at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court enter an order:

1. Awarding Plaintiffs compensatory damages, including pre- and post-judgment interest.

2. Awarding Plaintiffs punitive and exemplary damages.

3. Preliminarily and Permanently Enjoining Defendants from:

    a. Publishing libelous statements about Plaintiffs; and

    b. Engaging in unfair business acts, practices and/or conduct against Plaintiffs.

4. Awarding Plaintiffs restitution and disgorgement of Defendants' unlawful revenues.

5. Awarding Plaintiffs all costs and expenses in connection with this action, including their reasonable attorneys' fees, expenses and costs.

6. Awarding any other relief as the Court may deem to be just or appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

DATED:

                                                      ATTORNEYS FOR PLAINTIFFS

By: *s/ Ashley D. Posner*
ASHLEY D. POSNER
POSNER LAW GROUP
15303 VENTURA BOULEVARD #900
SHERMAN OAKS, CA 91403
Tel: (310) 475-5820
Fax: (310) 474-1901
ashleyposner@gmail.com

JAY J. RICE
NAGEL RICE LLP
103 EISENHOWER PARKWAY
SUITE 103
ROSELAND, NJ 07068
Tel: (973) 618-0400
Fax: (973) 618-9194
jrice@nagelrice.com
Admitted Pro Hac Vice

11