1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**POSNER LAW CORPORATION**
ASHLEY D. POSNER (Cal. Bar No. 106195)
15303 Ventura Boulevard, Suite 900
Sherman Oaks, CA 91403
Telephone: (310) 475-8520
ashleyposner@gmail.com

**NAGEL RICE, LLP**
Jay J. Rice, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
jrice@nagelrice.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD LINDZON, et als., | Case No.: 3:15-cv-00828-DMS-JLB |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** |
| vs. | |
| DANIEL NADLER et al., | Date:  October 30, 2015 |
| Defendants. | Time:  1:30 p.m. |
| | Location:  Courtroom 13A |
| | Judge:  Dana M. Sabraw |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................ii

INTRODUCTION ...............................................................................................1

FACTUAL ALLEGATIONS..................................................................................2

ARGUMENT.......................................................................................................3

   I.    Plaintiffs Have Adequately Pled Trade Libel and Intentional
        Interference with Prospective Economic Advantage ...................................4

   II.  Plaintiffs Have Stated a Claim for Violation of the UCL .......................7

   III.  Leave to Amend Complaint ...................................................................13

CONCLUSION .................................................................................................21

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Akhavein v. Argent Mortgage Co.*,

    2009 WL 3706822 (N.D. Cal. Nov. 4, 2009)..........................................................9

*Alborzian v. JPMorgan Chase Bank, N.A.*,

    235 Cal. App. 4th 29 (2015).................................................................................10

*Allen v. Ghoulish Gallery*,

    2007 WL 4207923 (S.D. Cal. Nov. 20, 2007) .......................................................7

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009)..............................................................................................6

*Balboa Island Vill. Inn, Inc. v. Lemen*,

    40 Cal. 4th 1141 (2007) .......................................................................................14

*Bell Atl. Corp. v. Towmbly*,

    550 U.S. 544 (2007)...........................................................................................5, 6

*Blizzard Entertainment Inc. v. Ceiling Fan Software, LLC*,

    28 F. Supp. 3d 1006 (C.D. Cal. 2013).................................................................14

*Burns v. Tristar Prods., Inc.*,

    2014 WL 3728115 (S.D. Cal. July 25, 2014) ......................................................14

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.*,

    35 Cal. 3d 197 (1983) ...........................................................................................9

*Conley v. Gibson*,

    355 U.S. 41 (1957)................................................................................................5

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,

    911 F.2d 242 (9th Cir. 1990)...............................................................................15

*Danvers Motor Co., Inc. v. Ford Motor Co.*,

    432 F.3d 286 (3d Cir.2005)...................................................................................9

*Dillon v. NBCUniversal Media LLC*,

    2013 WL 3581938 (C.D. Cal. June 18, 2013) ....................................................11

*Ewert v. eBay, Inc.*,

    2010 WL 4269259 (N.D. Cal. Oct. 25, 2010)................................................................12

*Fleck Bros. Co. v. Sullivan*,

    385 F.2d 223(7th Cir. 1967), in .........................................................................................7

In re First Alliance Mortg. Co.,

    471 F.3d at 995 ................................................................................................................13

*In re Webkinz Antitrust Litig.*,

    695 F. Supp. 2d 987 (N.D. Cal. 2010) ...........................................................................11

*In re Yahoo! Litig.*,

    251 F.R.D. 459 (C.D. Cal. 2008) ...............................................................................11, 12

*James v. Herbert*,

    149 Cal. App. 2d 741 (1957) .............................................................................................9

*Kwikset Corp. v. Superior Court*,

    51 Cal. 4th 310 (2011) ......................................................................................................9

*Linear Tech. Corp. v. Applied Materials, Inc.*,

    152 Cal. App. 4th 115 (2007)....................................................................................10, 11

*Luxul Tech. Inc. v. Nectarlux, LLC*,

    78 F. Supp. 3d 1156 (N.D. Cal. 2015) .....................................................................12, 13

*New.Net, Inc. v. Lavasoft*,

    356 F. Supp. 2d 1090 (C.D. Cal. 2004)............................................................................8

*Newton v. Am. Debt Servs., Inc.*,

    75 F. Supp. 3d 1048 (N.D. Cal. 2014) .....................................................................13, 14

*Parks Sch. of Bus., Inc. v. Symington*,

    51 F.3d 1480 (9th Cir. 1995)............................................................................................5

*Qwest Commc'ns Corp. v. Herakles, LLC*,

    2008 WL 783347 (E.D. Cal. Mar. 20, 2008) ...................................................................8

*Rainbow Business Solutions v. Merchant Services, Inc.*,

    2013 WL 6734086 (N.D. Cal. Dec. 20, 2013) ..............................................................12

*Rennie & Laughlin, Inc. v. Chrysler Corp.*,
    242 F.2d 208 (9th Cir. 1957)................................................................6

*Rex v. Chase Home Fin. LLC*,
    905 F. Supp. 2d 1111 (C.D. Cal. 2012)..............................................10

*Rosenbluth International, Inc. v. Superior Court*,
    101 Cal. App. 4th 1073 (2002)..........................................................12

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010)..............................................................6

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002)............................................................................6

*Theme Promotions, Inc. v. News Am. FSI*,
    35 F. App'x 463 (9th Cir. 2002)........................................................8

*Turner v. Milstein*,
    103 Cal. App. 2d 651 (1951)..............................................................8

*Underground Solutions, Inc. v. Palermo*,
    2014 WL 4703925 (N.D. Ill. Sept. 22, 2014) ...................................7

*White v. Trans Union, LLC*,
    462 F. Supp. 2d 1079 (C.D. Cal. 2006)............................................10

*Zhang v. Superior Court*,
    57 Cal. 4th 364 (2013) ......................................................................13

**STATUTES**

California Business and Professions Code § 17200................................9, 13

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ................................................5

Federal Rule of Civil Procedure 8(a)(2)..................................................5

Rule 8 ...................................................................................................6, 8

Rule 8(a)...................................................................................................6

1

2                                    **INTRODUCTION**

3          The case at bar involves a concerted effort by Defendant Daniel Nadler, a

4   principal of Defendant Kensho Technologies, Inc. ("Kensho"), to wage a secret

5   campaign to destroy the businesses and reputations of Plaintiffs Howard Lindzon,

6   Social Leverage, LLC, Social Leverage Capital Fund I, LP, and Social Leverage

7   Capital Fund II, LP. Defendants characterize this proceeding as a baseless lawsuit

8   brought to harass Defendants and to gain some kind of leverage over Defendants in

9   an arbitration proceeding currently pending between Plaintiff Social Leverage

10  Capital Fund I, LP ("Social Leverage I") and Defendant Kensho. Nothing could be

11  further from the truth. As is set forth in the First Amended Complaint, dated July

12  15, 2015 ("FAC"),[1] this Memorandum, and the accompanying Certification of

13  Plaintiff Howard Lindzon, this proceeding is brought because Mr. Nadler, in

14  response to Social Leverage's expressed intent to begin an arbitration proceeding,

15  has spread vicious lies about Mr. Lindzon that have harmed, and will continue to

16  harm, Plaintiffs' businesses.

17         The gravamen of Defendants' Motion to Dismiss is that Plaintiffs have failed

18  to plead damages with sufficient particularity. As is set forth in more detail below,

19  in light of the nature of Mr. Nadler's conduct, which, we submit, was intended to be

20  secret and likely goes beyond the emails known to Mr. Lindzon, and further in light

21  of the fact that Mr. Nadler knows who he sent his slanderous emails to and who he

22  made slanderous comments to, the damages pled in the FAC and described in the

23  accompanying Certification of Mr. Lindzon ("Lindzon Cert.") are more than

24  sufficient at this stage of these proceedings. Thus, the Court should deny

25  Defendants' Motion to Dismiss and permit the parties to proceed to discovery,

26  where, we submit, the full extent of Mr. Nadler's improper conduct will be

27  revealed.

28  _____

[1] Plaintiffs' original Complaint in these proceedings was filed on April 15, 2015

## FACTUAL ALLEGATIONS

Plaintiff Howard Lindzon is a venture capital investor and blogger, and he and businesses he founded have made, as well as received, significant venture capital funding. FAC ¶ 4, Lindzon Cert. ¶¶ 3 – 6. Mr. Lindzon is one of the founders of Plaintiff Social Leverage, LLC ("Social Leverage"), a venture capital firm focused on early-stage opportunities, primarily in tech and media. FAC ¶¶ 12, 14, Lindzon Cert. ¶ 6.

Defendant Daniel Nadler is the founder and Chief Executive Officer of Kensho. FAC ¶ 17. In May 2013, Social Leverage I became one of the initial venture capital investors in Kensho, investing $250,000. FAC ¶ 16. During the months following the investment, Mr. Lindzon made various introductions on Kensho's behalf to prospective investors, some of which actually invested in Kensho, as well as to prospective advisors. In return, Mr. Nadler showered Mr. Lindzon with effusive praise and thanks. Lindzon Cert. ¶ 12. The parties' relationship changed, however, after Kensho received substantial investments from bigger "players" in the investment world, including Google Ventures and Goldman Sachs. Lindzon Cert. ¶ 12.e., f. In August 2014, despite Social Leverage I's protests that it had no right to do so, Kensho purported to return Social Leverage I's investment in Kensho; whether Kensho had the right to do so is the subject matter of an arbitration proceeding currently pending before the American Arbitration Association that was commenced by Social Leverage I in April 2015. Lindzon Cert. ¶ 12.f.

In February 2015, Mr. Nadler sent at least two emails defaming Mr. Lindzon to persons associated with three prominent venture capital firms, Foundry Group, Accel Partners, and General Catalyst. The first email was sent on February 2, 2015 to Brad Feld, co-founder of Foundry Group. FAC ¶¶ 18 – 20; Lindzon Cert. ¶13. The second email was sent on February 27, 2015 to Fred Destin of Accel Partners and Larry Bohn of General Catalyst. FAC ¶¶ 21 – 23; Lindzon Cert. ¶14. Mr.

1  Nadler's email to Mr. Feld falsely stated, among other things, that Mr. Lindzon had

2  committed fraud and violated regulations and accounting standards through "Bernie

3  Madoff-like scams," that Mr. Lindzon "uses shell games and bait and switch tactics

4  to lure and exploit" inexperienced first-time entrepreneurs, that "other

5  entrepreneurs … had actually sued [Mr. Lindzon] for attempting to scam and

6  manipulate them," and that Mr. Lindzon had caused millions of dollars to "simply

7  disappear[]" in previous financial relationships. FAC ¶¶ 18 – 20; Lindzon Cert. ¶13.

8  The email to Messrs. Destin and Bohn reiterated the same false claims about Mr.

9  Lindzon, in some cases with slightly different wording, and added new false claims.

10  FAC ¶¶ 22 – 23; Lindzon Cert. ¶14.

11      The community of investors in start-up tech deals, of which Plaintiffs are a

12  part, is small. FAC ¶ 13.

13      Since Mr. Nadler sent the emails at issue here, neither Foundry Group, which

14  previously invested substantial sums in StockTwits (Lindzon's social media

15  company), nor Mr. Feld, who previously invested in certain of Mr. Lindzon's

16  companies, nor Mr. Destin, who invested in two prior Social Leverage investments,

17  has made any additional investment in any of Mr. Lindzon's companies. Lindzon

18  Cert. ¶¶ 4.f, 13.b, 13.c.(4), 14.e.

19                          **ARGUMENT**

20      When reviewing a motion to dismiss, the allegations of material fact in the

21  plaintiff's complaint are taken as true and construed in the light most favorable to

22  the plaintiff. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.

23  1995). To survive an attack by a Federal Rule of Civil Procedure 12(b)(6) motion to

24  dismiss, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2), which

25  "requires only 'a short and plain statement of the claim showing that the pleader is

26  entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is

27  and the grounds upon which it rests.' " *Bell Atl. Corp. v. Towmbly*, 550 U.S. 544,

28  555 (2007), citing *Conley v. Gibson*, 355 U.S. 41 (1957). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly, supra*, at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal, supra,* at 678, citing *Twombly, supra*, at 556. " 'Plausibility' in this context requires that:

> the plaintiff … give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen. For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)

The Supreme Court has indicated that, in ruling upon motions to dismiss, courts should keep in mind that "[t]he liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002). Motions to dismiss are viewed with disfavor because "the primary objective of the law is to obtain a determination of the merits." *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 213 (9th Cir. 1957).

We submit that, under applicable standards, Plaintiffs have sufficiently pled all of their claims, and that none of them should be dismissed.

## I. Plaintiffs Have Adequately Pled Trade Libel and Intentional Interference with Prospective Economic Advantage

Defendants attack Plaintiffs' claims of trade libel and intentional interference with prospective economic advantage as inadequate on the grounds that Plaintiffs have failed to set forth the injuries suffered and relationships disrupted with sufficient particularity. We submit that, under the circumstances, the claims made in the FAC, combined with the additional information provided in the accompanying Certification of Mr. Lindzon, are adequate to satisfy all pleading

1   requirements with respect to these claims. Specifically, Plaintiffs have alleged a

2   history of investments by Foundry Group, Mr. Feld, and Mr. Destin in Plaintiffs'

3   companies and that those investments stopped after Mr. Nadler sent his defamatory

4   emails. Lindzon Cert. ¶¶ 4.f, 13.b, 13.c.(4), 14.e. Those facts alone demonstrate that

5   Plaintiffs have suffered a cognizable injury.

6           In their brief, Defendants conflate the standards required for Plaintiffs' proof

7   at trial with the standards Plaintiff must satisfy to survive a motion to dismiss.

8   However, the standards of proof required to prevail at trial are far greater than the

9   pleading standards required to survive a motion to dismiss. "[O]n a motion to

10   dismiss in federal court, … the requirement to 'specifically state' items of special

11   damages does not present so high a hurdle. '[I]t is enough to identify a concrete

12   loss.' " *Underground Solutions, Inc. v. Palermo*, 2014 WL 4703925, at *6 (N.D. Ill.

13   Sept. 22, 2014). For example, in the *Underground Solutions* case, the Court, ruling

14   on a motion to dismiss, held that allegations that plaintiffs' personnel spent

15   extensive time and effort addressing customer concerns raised by the defendants'

16   defamatory statements were sufficient to satisfy damages element of trade libel

17   claim. *Id.* Similarly, in *Fleck Bros. Co. v. Sullivan*, 385 F.2d 223, 225 (7th Cir.

18   1967), in reversing the trial court's grant of a motion to dismiss, the Court held that

19   the plaintiff's allegations that it was "being refused normal credit terms by its

20   suppliers and … expended time, money, and effort to reestablish its credit" were

21   sufficient to plead special damages as a result of defamation, adding that

22   "Procedures are available by which defendants can learn the names, circumstances,

23   and amounts, and the details need not be pleaded."

24           In contrast, in *Allen v. Ghoulish Gallery*, 2007 WL 4207923 at *16 (S.D. Cal.

25   Nov. 20, 2007), which Defendants cite in support of their motion, the court

26   dismissed plaintiff's claim *after trial*, and the case addresses only whether the

27   plaintiff's proofs on trade libel damages *at trial* were adequate, not the pleading

28   requirements that must be satisfied to survive a motion to dismiss. Similarly,

1   *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113 (C.D. Cal. 2004), also cited

2   by Defendants, addressed a motion to dismiss under California's Anti–Strategic

3   Lawsuit Against Public Participation (anti-SLAPP) statute, not a motion to dismiss

4   under Federal Rule 8; unlike here, the plaintiff's burden in *New.Net* was not stating

5   a claim to relief that is plausible on its face, but rather, "a prima facie showing of

6   facts to sustain a favorable judgment if the evidence submitted by the plaintiff is

7   credited, a burden the court  described as "much like that used in determining a

8   motion for nonsuit, directed verdict, or summary judgment." *New.Net, supra,* 356

9   F. Supp. 2d at 1098-99.

10        As to Plaintiffs' claim for intentional interference with prospective economic

11   advantage, again the allegations required to be pled by Plaintiffs to overcome a

12   motion to dismiss are substantially less than Defendants assert. For example, in

13   *Theme Promotions, Inc. v. News Am. FSI*, 35 F. App'x 463, 467 (9th Cir. 2002), the

14   Court ruled that, even though the plaintiff did not have long-term contracts with

15   those with whom it did business, it "seems foolhardy to deny that [plaintiff] obtains

16   some repeat business," and that the plaintiff's allegation that "it had relationships

17   with certain companies and expected to continue to work with them in the future"

18   was "sufficient at the complaint stage." *See also Qwest Commc'ns Corp. v.

19   Herakles, LLC*, 2008 WL 783347, at *11 (E.D. Cal. Mar. 20, 2008) (allegation that

20   plaintiff had relationships with prospective customers who had taken steps toward

21   engaging plaintiff was sufficient to survive motion to dismiss claim for tortious

22   interference with prospective economic advantage). The foregoing situations were

23   similar to the case at bar, where the recipients of Mr. Nadler's defamatory emails

24   previously invested in Plaintiffs' companies and Plaintiffs reasonably expected

25   them to continue to do so.

26        It long has been held, even under the strict rules of common law pleading,

27   that "less particularity is required when the facts lie more in the knowledge of the

28   opposite party than of the party pleading." *Turner v. Milstein*, 103 Cal. App. 2d

6

651, 658 (1951). *See also Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 217 (1983) (less specificity required to plead fraud when the facts lie more in the knowledge of the opposite party); *James v. Herbert*, 149 Cal. App. 2d 741, 750 (1957) (demurrer does not lie for uncertainties in complaint for wrongful exclusion of plaintiff from joint venture because they appear to be matters within the knowledge of defendants). Similarly, Federal courts relax requirements for pleading with specificity under Rule 9(b) under the same circumstances. *Akhavein v. Argent Mortgage Co.*, 2009 WL 3706822, at *2 (N.D. Cal. Nov. 4, 2009). Accordingly, here, only the Defendants know who else they spoke to, when, and what was said, and therefore, only the Defendants know the true extent to which Defendants' campaign of defamation has affected Plaintiffs.

## II. Plaintiffs have Stated a Claim for Violation of the UCL

### A.    Plaintiffs Have Established Statutory Standing Under the UCL

Defendants' initial assertion regarding Plaintiffs' claims under California Business and Professions Code § 17200 (the "UCL") is that Plaintiffs lack standing because they have not sufficiently pled injury. For the same reasons that Plaintiffs have satisfied the injury requirements for trade libel and intentional interference with prospective economic advantage, Plaintiffs have adequately pled injury for purposes of surviving a motion to dismiss Plaintiffs' UCL claims.

The "injury" requirement of the UCL was explained by the California Supreme Court in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). There the court declined to "supply an exhaustive list of the ways" in which the "economic harm" requirement of the UCL could be satisfied, and stated that the "quantum of lost money or property necessary to show standing is only so much as would suffice to establish injury in fact; ... some specific, ' "identifiable trifle" of injury.'" 51 Cal. 4th at 323-25 (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir.2005)).

Defendants cite a string of unreported cases in support of their claim that

1    Plaintiffs have failed to adequately plead injury under the UCL, but *reported* cases

2    demonstrate just the opposite. Courts repeatedly have held that claims of injury to

3    economic reputation is a sufficient allegation of injury under the UCL to survive a

4    motion to dismiss. *See, e.g., Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111,

5    1147 (C.D. Cal. 2012) (plaintiffs established UCL statutory standing by alleging

6    defendants' perpetration of credit reports containing inaccurate information); *White

7    v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084 (C.D. Cal. 2006) (same);

8    *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 38-39 (2015)

9    (borrowers' allegedly diminished credit score was sufficient "loss or deprivation of

10   money or property" for standing under the UCL). Accordingly, Plaintiffs'

11   allegations of injury to their reputations affecting their investment opportunities

12   within the small community of tech venture capital investments constitute an

13   "economic injury" and, thus, are more than sufficient to establish Plaintiffs'

14   statutory standing for purposes of a motion to dismiss a UCL claim.

15   **B.      Plaintiffs' Allegations Fall Within the Ambit of the UCL**

16          **(i)      *Linear Tech* and Its Progeny are Inapplicable Because**

17                 **Plaintiffs' Claims are not Based on Contract**

18          Defendants cite *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App.

19   4th 115 (2007) and other cases that rely on *Linear Tech* for the proposition that suit

20   under the UCL by any person or entity other than a competitor or individual

21   consumer is categorically barred. However, as is set forth in more detail below,

22   *Linear Tech* is limited to UCL claims made by entities based on contract.

23          In order to try to shoehorn the case at bar within the prescriptions of *Linear

24   Tech* and its progeny, Defendants mischaracterize the nature of Plaintiffs' claims in

25   these proceedings. Defendants state, at page 9 of their brief, "The parties'

26   relationship arises solely from the fact that at one time [Social Leverage I] invested

27   in Kensho." While it is true that Social Leverage I invested in Kensho, that is

28   irrelevant to these proceedings. Plaintiffs' claims are not based on the contracts to

which Social Leverage I and Kensho are parties, but rather, the fact that Defendants separately defamed Plaintiffs. Plaintiffs would have the same claims even if no investment in Kensho had been made.

*Linear Tech* does not apply to the proceedings at bar because *Linear Tech* applies only to UCL claims made by entities based on contract, and no contract claims are made by Plaintiffs. The simple and logical ruling in *Linear Tech* was that, where the public in general is not injured and the plaintiff is not a competitor of the defendant, a corporate party to a contract may not pursue UCL claims on behalf of sophisticated corporations that are parties to the same or similar contracts. In dismissing the plaintiffs' UCL claims, the *Linear Tech* court stated:

> [T]he harm [Linear] suffered *did* result from contracts specifically with the plaintiff. The other alleged victims likewise are sophisticated corporate customers who have entered or will enter their own contracts with respondents... In these circumstances, *where a UCL action is based on contracts* not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks.

*Linear Tech., supra*, 152 Cal. App. 4th at 135. (emphasis added)

Similarly, in dismissing the plaintiffs' UCL claim in *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987 (N.D. Cal. 2010), cited by Defendants, the court stated that the plaintiffs' UCL claim "alleges only that the conduct has a tendency to cause injury ... *under the contracts each plaintiff presumably has with Ganz.*" *Id.* at 999. (emphasis added) The third case cited by Defendants on this issue, the unreported *Dillon v. NBCUniversal Media LLC*, 2013 WL 3581938 (C.D. Cal. June 18, 2013), is inapposite because the court in that case simply stated that the defendants had claimed that the UCL claims should be dismissed under *Linear Tech* and then, without comment, ruled that *Linear Tech* did not apply because the plaintiff was the defendants' competitor. *Id.* at *7.

Defendants' narrow reading of *Linear Tech* was specifically rejected in *In re Yahoo! Litig.*, 251 F.R.D. 459, 474-75 (C.D. Cal. 2008). In that case, the court ruled

1   that *Linear Tech* that the holdings of both *Linear Tech* and the case it heavily relies

2   on, *Rosenbluth International, Inc. v. Superior Court,* 101 Cal. App. 4th 1073

3   (2002), turned on the fact that the named plaintiffs were seeking to vindicate the

4   contractual rights of extremely large corporations that had the wherewithal to

5   protect themselves. *Id.* at 475. Because it was unclear whether major corporations

6   constituted a significant portion of the class, the *Yahoo!* Court refused to dismiss

7   the UCL claim. *Id. See also Rainbow Business Solutions v. Merchant Services, Inc.*,

8   2013 WL 6734086 (N.D. Cal. Dec. 20, 2013), *15 FN 5 (refusing to dismiss UCL

9   claims based on contracts with "relatively unsophisticated small businesses");

10  *Ewert v. eBay, Inc.*, 2010 WL 4269259 at *8-9, 13 (N.D. Cal. Oct. 25, 2010)

11  (rejecting eBay's contention that "corporations and other business entities generally

12  cannot seek relief under the UCL" and certifying a class action under the UCL on

13  behalf of a class that included individuals, corporations, and other business

14  entities).

15      In sum, Defendants' reliance on *Linear Tech* and its progeny fail because

16  Plaintiffs' claims are not based on contract and Plaintiffs are not seeking to

17  vindicate the contractual rights of large corporations.

18          **(ii)   Plaintiffs Have Alleged Claims Within the Ambit the UCL**

19      Defendants cite a host of cases that purport to bar Plaintiffs' claims as

20  outside the ambit of the UCL. However, as is set forth in more detail below, that

21  simply in not the case. As is shown by the cases described below, unfair business

22  conduct by a defendant that affects the plaintiff's business or reputation, even when

23  the plaintiff is neither a competitor of the defendant nor an individual consumer, is

24  a violation of the "unfair" prong of the UCL. Moreover, Defendants misstate the

25  scope of the "unlawful" prong of the statute.

26      In a case analogous to the one at bar, *Luxul Tech. Inc. v. Nectarlux, LLC*, 78

27  F. Supp. 3d 1156 (N.D. Cal. 2015), the Court, in holding that the claims of the

28  plaintiff, a light bulb manufacturer, that the defendant, its distributor, had made

1   misrepresentations about a patent suit against the plaintiff constituted a sufficient

2   allegation for violation of the UCL to survive a motion to dismiss, stated as

3   follows:

> Plaintiff has alleged a UCL claim under the unfair prong. … Under the "sweeping" coverage of the UCL, a practice does not need to be unlawful to be unfair. *See In re First Alliance Mortg. Co.,* 471 F.3d at 995. Rather, *the Court must balance "the impact" of Defendants' alleged wrongful conduct on Plaintiff against Defendants' justifications.* Here, Plaintiff has adequately pled that Defendants' representations have resulted in lost customers and damaged the value of Plaintiff's brand.

9   78 F. Supp. 3d at 1174 (emphasis added).

10      As is shown above, the *Luxul* Court did not find it necessary to analyze the

11   effect of the defendant's conduct on light bulb purchasers; rather, the only issue the

12   Court considered on defendant's motion to dismiss was whether there were

13   justifications for the defendant's "unfair" conduct that offset the injury to the

14   plaintiff.

15      Here, there can be no dispute that Nadler and Kensho had no justification

16   whatsoever to make defamatory statements in emails. Thus, Plaintiffs have clearly

17   alleged that Defendants' conduct was sufficiently "unfair" to meet the pleading

18   requirements of the UCL.

19      As to the "unlawful" prong of the UCL, contrary to Defendant's claims, the

20   California Supreme Court itself has ruled that a claim under the "unlawful" prong

21   of the UCL may be based on obligations imposed solely by the common law. *See*

22   *Newton v. Am. Debt Servs., Inc.,* 75 F. Supp. 3d 1048, 1058 (N.D. Cal. 2014), citing

23   *Zhang v. Superior Court,* 57 Cal. 4th 364, 384 (2013). The Court in *Newton*

24   described the scope of the "unlawful" prong as follows:

> "[I]f a 'business practice' violates any law—literally—it also violates § 17200 and may be redressed under that section." … California courts have previously found that the UCL provides a cause of action to remedy an extremely wide variety of allegedly "unlawful" behavior. "Virtually any law or regulation—federal or state, statutory or common law—can serve as predicate for a § 17200 'unlawful' violation."

1    75 F. Supp. 3d at 1058 (internal citations omitted).

2         Under this broad interpretation, tortious interference with contractual

3    relations has been held to state a claim for a violation of the "unlawful" prong of

4    the UCL. *See Blizzard Entertainment Inc. v. Ceiling Fan Software, LLC,* 28 F.

5    Supp. 3d 1006, 1017 (C.D. Cal. 2013) (claims for tortious interference with

6    contractual relations also state a claim for a violation of the "unlawful" prong of the

7    UCL). In *Blizzard,* as is the case here, the plaintiffs and defendants both were

8    businesses and were not competitors, and, therefore, this Court need not address

9    injury to the consuming public.

10              **(iii)   Threat of Repeated Injury Is Not Required to Enjoin**

11                       **Defamatory Conduct**

12         Citing the unreported *Burns v. Tristar Prods., Inc.,* 2014 WL 3728115 (S.D.

13    Cal. July 25, 2014), Defendants assert that Plaintiffs are not entitled to an injunction

14    against Defendants' continued defamation of Plaintiffs because Plaintiffs have not

15    pled facts to indicate they face a threat of repeated injury. Defendants are wrong.

16    The California Supreme Court has imposed no such requirement on the issuance of

17    injunctions against defamatory speech. Rather, in *Balboa Island Vill. Inn, Inc. v.*

18    *Lemen,* 40 Cal. 4th 1141, 1155-56 (2007), the California Supreme Court held that,

19    "following a trial at which it is determined that the defendant defamed the plaintiff,

20    the court may issue an injunction prohibiting the defendant from repeating the

21    statements determined to be defamatory." Moreover, and in any event, absent an

22    injunction, Plaintiffs face the very real threat of continued defamation that Plaintiffs

23    likely will be unaware of and that likely will target the very investors Plaintiffs rely

24    on to fund their business.

25         **D.    Vicarious Liability**

26         The sole grounds for Defendants' objections to Plaintiffs' vicarious liability

27    claims is that Plaintiffs' other claims are "defective." Defendants do not dispute that

28    Kensho is vicariously liable for Mr. Nadler's conduct alleged in the FAC. As set

1   forth above, because Plaintiffs' claims are sufficient to avoid dismissal, the

2   vicarious liability claim also should not be dismissed.

### III.  LEAVE TO AMEND COMPLAINT

4       Plaintiffs respectfully request that, if any of Plaintiffs' claims are dismissed,

5   the Court grant Plaintiffs leave to amend any perceived deficiency in the pleadings.

6   Unless amendment would be futile, courts are required to grant a nonmoving party

7   leave to amend a claim. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,

8   911 F.2d 242, 246-47 (9th Cir. 1990). Given the infancy of this lawsuit and the

9   fact-intensive inquiries that will ensue, any perceived deficiencies in Plaintiffs'

10  pleadings easily are curable at the pleading stage.

### CONCLUSION

12      For the reasons set forth above, Plaintiffs respectfully request that

13  Defendants' Motion to Dismiss be denied in its entirety.

DATED:

ATTORNEYS FOR PLAINTIFFS


By: *s/ Ashley D. Posner*
    ASHLEY D. POSNER
    POSNER LAW GROUP
    15303 VENTURA BOULEVARD #900
    SHERMAN OAKS, CA 91403
    Tel: (310) 475-5820
    Fax: (310) 474-1901
    ashleyposner@gmail.com


By: *s/ Jay J. Rice*
    JAY J. RICE
    NAGEL RICE LLP
    103 EISENHOWER PARKWAY
    SUITE 103
    ROSELAND, NJ 07068
    Tel: (973) 618-0400
    Fax: (973) 618-9194
    jrice@nagelrice.com
    Admitted Pro Hac Vice